212 So.2d 729 (1968)
Martha FOSTER, wife of/and Sanford Foster
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY.
No. 2864.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1968.
Anthony J. Vesich, Jr., New Orleans, for plaintiffs-appellees.
H. Martin Hunley, Jr., Lemle & Kelleher, New Orleans, for defendant-appellant.
Before REGAN, CHASEZ and HALL, JJ.
CHASEZ, Judge.
This is a suit against St. Paul Fire and Marine Insurance Company, the insurer of *730 Dr. Daniel McIntire, brought by plaintiffs Martha Foster and her husband Sanford Foster for damages Mrs. Foster received because of Dr. McIntire's alleged negligence in administering a hypodermic injection. The injection complained of contained a mixture of Vitamin B12 and crude liver which allegedly caused a discoloration of Mrs. Foster's right arm. The hyperpigmented spot covered an area of approximately 8 cm by 4 cm on her right upper arm and remained there for some two and one-half years. Because of this discoloration Mrs. Foster claims mental anguish, pain and suffering and Mr. Foster claims present and future medical expenses. A trial on the merits was had in the Civil District Court for the Parish of Orleans, and judgment was rendered in favor of plaintiff, Martha Foster, awarding her $750.00 with legal interest from date of judicial demand. Co-plaintiff, Sanford Foster, had his claim dismissed and accordingly judgment with respect to him was in favor of the defendant. From the judgment in favor of Mrs. Martha Foster, defendant St. Paul Fire and Marine Insurance Company has appealed. No appeal was taken by Sanford Foster and this litigant is not before this court.
The facts as revealed in the record developed as follows: Mrs. Foster, a professional dancer performing in night clubs in both New Orleans and Baltimore, had visited Dr. McIntire on several occasions prior to her visit March 2nd, 1964. The purpose of her visit on this date was to receive treatment for a muscle spasm in the lumbosacral area. For this Dr. McIntire had administered diathermy and he prescribed a muscle relaxant in tablet form. On this visit, Dr. McIntire stated that Mrs. Foster asked for a liver shot, and having given her a similar shot once before with no ill effect, he gave her a subcutaneous injection of 1 cc crude liver mixed with 1 cc of Vitamin B12 into the deltoid area of her upper arm. According to his testimony, he walked into an adjacent treatment room and with a sterile needle withdrew 1 cc each through the sterile tops of bottles containing crude liver and Vitamin B12. He then administered the injection into Mrs. Foster's outstretched arm. The discoloration as will be discussed in more detail appeared several days later, but at the time of the injection there seemed to be no unfavorable reaction.
Mrs. Foster agrees that she asked for a shot, but she insists that she requested a B12 injection because she felt weak and run-down after the diathermy treatments. She further testified that Dr. McIntire turned around to get the necessary equipment and then very quickly administered the injection into her right arm. She stated that immediately after the shot, her arm turned red and began swelling. That evening the spot turned dark blue and was the size of a hen's egg. There was no pain except that the site of the injection was sore for a few days immediately after its administration.
After her visit to Dr. McIntire on March 2nd Mrs. Foster returned to inquire about the discoloration. At this time Dr. McIntire described the blemish as a bluish spot, perfectly round, and about the size of a silver dollar. There was no redness nor temperature associated with the spot. Having never seen a blemish of this nature, he referred Mrs. Foster to Dr. Durward J. Thibodeaux, a dermatologist, for a more detailed analysis of her symptoms.
Dr. Thibodeaux who qualified as a specialist in dermatology submitted the following testimony. He examined Mrs. Foster about four months after the injection at which time he noted a bluish discoloration of irregular shape which was neither inflamed nor tender. Dr. Thibodeaux suggested a biopsy to determine exactly what the cause of the discoloration was. He revealed that Mrs. Foster told him that she had had a liver and iron shot. He admitted that the discoloration could have been caused by iron pigment, but only a biopsy would prove it. The patient refused to submit to the biopsy, and Dr. Thibodeaux, *731 having no certain proof, could only testify as to the several possible causes for such a reaction. He further testified that he had never seen such a reaction from crude liver and that normally the only problem is a local reaction lasting a day or so. Without the benefit of a biopsy as a diagnostic tool, Dr. Thibodeaux could prescribe only time as the cure for this discoloration; he suggested no other remedy.
Also submitted into evidence was a written report by Dr. Richard W. Vincent who also examined the plaintiff. He, too, could not explain the cause of the blemish, although normally he would expect a bruise (if that were the source of the discoloration) to have disappeared in a much shorter time. He further stated that he was doubtful if a biopsy would give any clue as to the mechanism or proper treatment. He did admit, however, that he would like to have a biopsy done before going too far into any method of treatment.
Mrs. Foster was also examined by Dr. Christianson of Ochsner Clinic. His diagnosis stated that she had "post-inflammatory hyperpigmentation (post trauma) due to iron deposition, vs. Melanin.[1] He prescribed observation for three months.
Dr. F. J. Padua was tendered as an expert in the field of general practice of medicine and as being familiar with the standards of care customarily used in the community, and he was accepted by counsel for both plaintiff and defendant. Dr. Padua testified that he knew Dr. McIntire and that he was a competent physician. He stated in response to a question concerning the method of Dr. McIntire's treatment of Mrs. Foster that he acted properly and without negligence. Dr. Padua has administered similar injections and has in fact seen similar reactions resulting in blue marks around the injection area, but he felt that the treatment was in accordance with proper medical standards. The discolorations that Dr. Padua had seen usually disappeared in two to three weeks, however.
Dr. Padua further testified that crude liver may be given in the arm, hip, or leg but he injects it into the arm most of the time with females because of ease and convenience. Also he would administer the injection on the patient's request, if he knew the patient and was familiar with her activities. He then stated as a medical expert that if a patient returned in three days after having an injection of B12 and crude liver, that it is possible that it originated from the injection, but this didn't indicate the injection was given negligently. In conclusion, he testified that he gave his patients no skin tests before giving them this type of injection, but he would not give this shot without some prior knowledge of the patient.
The court a qua applied the doctrine of res ipsa loquitur to the case at bar, but we feel the proof required by a strict application of this doctrine is too onerous for the physician named defendant in a malpractice suit. As set out by our Supreme Court in the landmark case of Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954) and more recently reiterated in Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100 (1966) the burden of proof in malpractice suits is clearly settled in Louisiana.
"As was pointed out in the Meyer case, according to the jurisprudence of this state the rule applicable to the care that must be exercised by physicians, surgeons, or dentists is that the law exacts of them only `that degree of skill and care which is usually possessed and exercised by practitioners of their profession in the same locality or community and makes it their duty to use reasonable care and diligence, along with their best judgment, in the application of their *732 skill to the case before them.' The court further declared that under this rule it is `incumbent on the physician, surgeon or dentist who becomes defendant in a malpractice case to show that he is possessed of the required skill and competence indicated and that in applying that skill to the given case he used reasonable care and diligence along with his best judgment.' As was also pointed out by this court in Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963), physicians, surgeons, and dentists are not insurers of the results of treatment afforded patients."
In the instant case the lower court stated in its reasons for judgment, "that the defendant has failed to establish, by a preponderance of the evidence, that Dr. McIntire exercised that degree of skill and care which is usually possessed and exercised by practitioners of his profession in this locality and community." This conclusion is apparently derived from the factual conclusion that Dr. McIntire had administered crude liver and B12 when Mrs. Foster simply requested that she be given a shot of B12. The standard of care considered by the court is that a physician should make "some determination of the possible reaction of the patient to the type injection intended."
We do not find the record supports this conclusion either in law or in fact. The only witness tendered to testify as to the professional standards both in the general practice of medicine and in the community was Dr. Padua. And nowhere in his testimony is there evidence to support the conclusion that Dr. McIntire failed to use reasonable care and diligence. The court mentioned that some determination of the possible reaction should be made prior to administering crude liver. Dr. Padua stated that he had given these shots on numerous occasions and had never given any test of that type.
We feel there can be no better test than the injection of a similar solution prior to the one now complained of as testified to by Dr. McIntire. Although Mrs. Foster has disagreed with his statement, we feel that Dr. McIntire is in a better position to state what was injected into her arm on either occasion. Thus, we disagree with the judgment and reasons of the court a qua and further state that the record and testimony of all the doctors appearing in this suit have served only to satisfy the burden of proof as set out by the Louisiana Supreme Court. Furthermore, we cannot find that plaintiff has shown negligence on the part of Dr. McIntire such as to warrant her recovery for this unfortunate reaction to the injection. Therefore, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be a judgment in favor of defendant, St. Paul Fire and Marine Insurance Company and against the plaintiff's, Martha Foster wife of Sanford Foster, dismissing her demands. All costs in this matter shall be borne by plaintiff-appellee.
Reversed and rendered.
NOTES
[1] "MelaninA dark bodily pigment found in hair, the choroid of the eye (the dark brown vascular coat of the eye), other dark tissues, and in melanotic tumors." Maloy, Medical Dictionary for Lawyers, Third Edition.