BOUTALL, Judge.
Plaintiff, Dale Chatellier, filed suit against Dr. Duncan McKee and Ochsner Foundation Hospital (properly Alton E. Ochsner Medical Foundation) for damages allegedly arising from negligent treatment and abandonment of treatment. The trial court dismissed plaintiff’s suit and plaintiff has appealed.
Plaintiff had suffered from a deviated nose and internal obstruction of the nose from early childhood. In 1966, plaintiff was referred to Dr. McKee, an expert in the field of plastic and reconstructive surgery. Dr. McKee recommended corrective surgery procedure for plaintiff’s nose, and on July 11, 1966, a rhinoplasty and submucuous resection was performed on plaintiff’s nose. Within a few days Mrs. Chatellier was discharged from the hospital and her nose was splinted and temporarily immobilized.
The plaintiff returned to Dr. McKee on August 12,1966 and gave a history of being forcibly struck on the nose by one of her children. Plaintiff’s nose became unstable after that trauma, and Dr. McKee determined that a second surgical procedure should be performed, although the internal obstruction was not as bad as before.
Plaintiff reentered the defendant hospital for the second procedure, and the operation was performed on January 4, 1967. That second procedure consisted primarily of placing silastic implants under the,skin.of plaintiff’s nose to fill out the shape to make it more esthetically pleasing. Following the January hospitalization, plaintiff was examined post-operatively by Dr. McKee four times, but plaintiff never returned after February 3, 1967.
*112 In 1973, subsequent to suit, plaintiff was struck with a pool cue stick which caused pain and swelling and damage to the nose of plaintiff, the extent of such damage and its effect on the nose not being determined at the time of the trial.
Plaintiff filed suit on January 3, 1968, alleging that the operations did not correct the deviation of her nose, but instead aggravated her condition. Plaintiff contends that the defendant doctor’s liability arises from his failure to exercise standards of ordinary care and failure to take further corrective procedures by abandoning treatment of the plaintiff.
After the trial, judgment was rendered in favor of the defendants. In his reasons for judgment, the trial judge found:
<< * * *
“In a claim such as this, plaintiff must prove the physician, in this case Doctor McKee, was guilty of acts of omission or commission which would be at variance with the medical standards prevailing in the community. From a review of the pleadings, testimony and evidence, the plaintiff has failed to carry this burden of proof, nor does the record support the plaintiffs allegation that she was refused medical care and treatment by either Doctor McKee or Ochsner Foundation Hospital.” * * *
We affirm the finding of the trial court.
In a medical malpractice suit it is incumbent upon the physician to show he is possessed of the required skill and competence and in applying the same he exercised reasonable care along with his best judgment.' See Foster v. St. Paul Fire and Marine Insurance Co., La.App., 212 So.2d 729. The law only exacts of physicians and surgeons that degree of skill and care usually possessed and exercised by practitioners of their profession in the same community. Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953).
Our review of the record convinces us that Dr. McKee met that standard of care and skill. Aside from Dr. McKee’s own testimony as to his performance meeting the required standards of care and skill, the defendant called Dr. George Hoffman, chief of plastic surgery at the Louisiana State University Medical School, for his expert testimony as to problems involved, procedures used, and the results obtained.
Dr. Hoffman testified that even with the best attempts to straighten a nose the cartilage of the nose has a tendency to warp or turn back to its former position because of scar tissue inside the nose. Additionally, Dr. Hoffman expressed his opinion that the blow suffered by the plaintiff in August of 1966 would aggravate the turning of the nose. As to Dr. McKee’s alleged negligence, Dr. Hoffman could discern no basis for any lack of skill or any negligence, nor could he determine that any denial of treatment would have affected the cause of the problem or the results of the operations.
Plaintiff had called Dr. Jack R. Anderson, an otolaryngology specialist who also does cosmetic facial surgery, as an expert. Although Dr. Anderson described the nose as not being esthetically pleasing, he nonetheless found the nose improved in appearance after the second operation. Dr. Anderson acknowledged that in operations such as these results are never guaranteed or warranted. As for any negligence on the part of Dr. McKee, Dr. Anderson testified that at no time did he feel the doctor or the hospital staff to be negligent in performance of the surgery.
Nowhere in the record is there contained any testimony or evidence that the defendants were negligent in deviating from the standard of care and skill required of them, and thus plaintiff’s allegations necessarily fail for lack of proof.
The plaintiff complains mainly that the desired result from the two operations was not obtained, that is, after the two operations her nose was still not as attractive or photogenic as she would prefer. However, physicians and surgeons are not insurers of the results of treatment afforded patients. Fox v. Argonaut Southwest Insurance Co., La.App., 288 So.2d 102 (1974). In this case there was no specific *113 contract for the desired result, and even the plaintiff testified that the defendant doctor made no guarantee of result. As the court said in Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963):
“. . .in the absence of a special and peculiar contract, the fact that treatment has resulted unfavorably does not even raise a presumption of want of proper care, skill, or diligence.” * * *
As for plaintiff’s claim that she was denied treatment, we note that there is not a single piece of evidence, other than plaintiff’s testimony, that she was denied further treatment because she could not pay her bill. The testimony by all doctors and hospital personnel was that follow up treatment was never denied a patient; that neither the defendant doctor nor defendant hospital had such a practice of' refusing treatment to post-operative patients for failing to pay their bill.
Accordingly, for the foregoing reasons, the judgment appealed is affirmed.

AFFIRMED.